WOODRUFF v. NEW YORK, L. E. & W. R. Co.

*(Superior Court of Buffalo, Special Term.  April 1, 1890.)*

TRUSTS—ACTION BY TRUSTEE—ALLOWANCE OUT OF ESTATE.

The G. railroad company conveyed all its property to plaintiff in trust to secure its bonds, and afterwards leased all its property to plaintiff, who assumed the bonds secured by the deed of trust.  A few days after this lease plaintiff leased the property to the E. railway company, which assumed plaintiff's obligations under the lease to him.  Afterwards plaintiff sued the E. company to enforce payment of the bonds, and a judgment was rendered, which relieved plaintiff from personal liability, but was also in other respects unfavorable to the bondholders.  Plaintiff appealed, and procured a judgment which fixed his liability, and made the bondholders secure.  *Held*, that the litigation was for the benefit of the bondholders, and not for plaintiff's benefit, and that plaintiff was entitled to an allowance for expenses and attorneys' fees.

At chambers. Action by Lauren C. Woodruff against the New York, Lake Erie & Western Railroad Company. Defendant moves to vacate certain orders granting allowances to plaintiff herein, and for counsel fees, made *ex parte* upon application of the plaintiff. The motion is made upon plaintiff's papers, and the papers, proceedings, and judgment rolls in several actions and proceedings between the parties hereto, and between plaintiff and the predecessors of defendant. The facts appearing upon this application, so far as material to a disposition of the present controversy, are as follows: On or about the 20th day of June, 1871, the Erie & Genesee Valley Railroad Company, a corporation existing under the laws of the state of New York, for the purpose of completing its road, and being desirous of raising money to that end, executed and delivered to the plaintiff herein, Augustus Frank, and Le Grand Lockwood, now deceased, a deed in trust of its said property, for the purpose of securing the payment of bonds issued by said corporation in amount to the sum of $120,000, payable at the Metropolitan National Bank, in the city of New York, on the 1st day of July, 1886, bearing interest from the 1st day of July, 1871, at the rate of 7 per cent. per annum. The said bonds were duly delivered by said corporation to said trustees, and were by them negotiated and sold. Subsequently, and about November 1, 1871, the said plaintiff entered into a written agreement with said corporation, whereby the said corporation demised and leased to plaintiff its said road, together with all its property, rights, and appurtenances connected therewith, for and during the term of its corporate existence, in consideration of which plaintiff assumed the payment of the said bonded debt of $120,000, together with the interest thereon. Thereafter, about the 8th of November, 1871, said plaintiff demised and leased said road, its property and appurtenances, to the Erie Railway Company, a railroad corporation duly chartered by the state of New York, in and by the terms of which lease the said last-named company assumed all the obligations imposed upon plaintiff by virtue of the prior lease, and thereupon said Erie Railway entered into possession of the said road, and, through itself and its successors, has since continued to control and operate the same. The Erie Railway Company made default in the payment of interest on said bonds during its corporate existence. In 1875 an action was commenced by the attorney general of the state against the Erie Railway Company for a dissolution of the corporation, and pending said action Hugh J. Jewett was, on the 29th day of May, 1875, appointed temporary receiver of said company, by an order duly entered, and immediately entered upon the duties of his receivership, took possession of, and continued to operate, said road leased by plaintiff, as aforesaid. The said receiver also made default in the payment of the interest due upon said bonded debt. Subsequently plaintiff obtained an order granting him leave to sue said receiver, and thereafter, about October 20, 1877, he brought an action against said receiver, the Erie Railway Company, and others, to compel the payment of interest, as provided in said bonds. This action resulted in an interlocutory judgment, directing payment by the receiver of said interest out of any fund in his hands applicable for the payment of rent of leased roads, and directing a reference to determine whether any such funds existed applicable to said purpose, and whether said receiver had been discharged from his trust. This judgment was reversed on appeal to the general term, the court holding that the said leases were void, and that plaintiff had no standing to maintain the action. The court of appeals reversed the judgment of the general term, and affirmed that of the special term. Subsequently said reference was executed, and the referee reported that there was, on December 5, 1889, while said interlocutory judgment was in force, funds sufficient for the payment of the judgment, as therein provided, but that at the time of the reference there was no money or funds in the hands of such receiver, and that he had been discharged from his said trust by order of the court, and the money applicable to the payment

of the judgment was by said order paid by the receiver to the defendant herein. The special term decided that the receiver was not discharged from the operation of the judgment, but must pay the money into the designated depository. This judgment was modified at general term (25 Hun, 246) by providing that the receiver should only be required to pay such moneys as he might at the time of the referee's report have in his hands, or such sums as might thereafter come into his hands from the Erie Railway Company. This judgment was upon appeal reversed, and the judgment of the special term affirmed, by the court of appeals. 93 N. Y. 609. Subsequently, and about July, 1886, an action was brought in this court by plaintiff to compel the payment of the several sums of interest heretofore mentioned by this defendant, as the successor in interest of the Erie Railway Company, and which had also received the sum of money so held by the said receiver from him at the time of his discharge from the receivership, and which was applicable to the payment of the said judgment, and had also entered into the possession of, and was operating, the said road, so leased as aforesaid from plaintiff. Said action was duly tried in favor of said plaintiff, whereby defendant was commanded to pay the sum of $49,504.36, with interest from the 16th day of September, 1889, together with certain costs, into the Metropolitan Trust Company of the city of New York, to the credit of Lauren C. Woodruff and Augustus Frank, as surviving trustees under the said mortgage or trust-deed executed by the Erie & Genesee Valley Railroad Company. The said defendant has complied with the judgment herein and has paid the said money to the credit of the said trustees, and the same is now awaiting distribution by the trustees to the holders of the coupons due upon said bonds.

*Myron H. Peck* and *L. N. Bangs*, for plaintiff. *Rogers, Locke & Milburn*, for defendant bank. *E. C. Randall*, for certain coupon holders. *E. E. Fannan*, for Augustus Frank, trustee.

HATCH, J. It was deemed essential to state the facts connected with this motion with some fullness, that the equities applicable thereto might clearly appear. From these facts and the record it appears that at the time of the execution of the bonds plaintiff and Frank occupied no other relation to the bondholders than such as arose by virtue of their trusteeship to sell the bonds, receive and pay the interest. No personal liability attached to them for any defaults that might be made which did not involve an omission to properly discharge the duties of their trust. Eliminating from this case now all records and proceedings by virtue of which the fund herein has been obtained, we see that it comes to the hands of the trustees by virtue of their capacity as such, and in none other. The result, therefore, of the litigation, however or by whomsoever carried on, has been to bring into court a sum of money payable to no particular individual, not even to the plaintiff, but payable to trustees, to be by them distributed in accordance with the obligation imposed upon them by their original appointment. We therefore have presented a case where a litigation carried on by one of the trustees for a period of years, resulting in a judgment directing the funds to be paid to representatives appointed for distribution, in which we are asked to say that the person carrying on the litigation, who finally receives the money, of which he takes nothing personally, has occupied, and now occupies, the position of an individual litigating for his own interest with respect to the fund, and must pay not only his own expenses, but the charges of counsel, while he gets nothing, and the beneficiary takes all, without charge, cost, or trouble. If this be the law, it must be declared so by some other tribunal than this. It would be perhaps conceded that, if the plaintiff had conducted this litigation in his representative capacity, or been without personal interest or liability with respect to the subject-matter thereof, then the rule would be different with respect to his right for reimbursement. Does the fact, then, that Woodruff was

surety for the payment of these bonds and interest thereon so far change his relation thereto that it must be said that he so carried it on as his personal matter, with the sole purpose and object of relieving himself from his personal obligation, and in no sense to create a fund for the benefit of others? This presents one of the questions urged, and attacks the power of the court. When Woodruff took the lease from the Erie & Genesee Valley Railroad Company, he thereby assumed the payment of the bonded debt, and became, as to the Erie Railway, the defendant herein, and the bondholders, a surety for the payment of the coupons as they matured.    It was doubtless intended at the time of the execution of the lease that the Erie Railway was to become the real, and practically the primary, party in the operation of the road, the extension of its line, and the payment of interest upon its bonded debt; for in the lease from the Erie & Genesee Company to the plaintiff is found this clause: "In case of payment of the bonds by the party of the first part, or the Erie Railway Company, thereafter the annual rent to be one dollar and taxes." The answer of the Erie Railway Company and of the receiver also pleads as a defense that plaintiff simply occupied the position of surviving trustee, and that any cause of action which might exist belongs to the surviving trustees under said trust-deed, and not to plaintiff.    While these facts do not change the legal obligation of the parties, it bears upon the equity of the application and plaintiff's standing.    Such position is also reinforced by the fact that it does not appear that plaintiff was in any sense benefited by the assumption of the liability, as the lease to the Erie Railway was upon terms similar to the one to him; that he occupied the position of a conduit simply, except that the liability attached in the passage.

After default in payment of the maturing coupons, the subsequent insolvency of the Erie Railway, and the appointment of the receiver, plaintiff obtained leave to commence an action against the latter.    This he commenced, making the receiving party defendant with others.    No actions have ever been commenced against plaintiff to enforce payment of the coupons.    The issue between the parties was at once sharply defined, and the claim made that plaintiff had no standing in court, and no cause of action against the defendants; that the said agreements were inoperative and void, creating no liability against or in favor of any person; and the claim thus made has been pressed with great ability, vigor, and skill upon the courts, from the special term to the court of appeals, not only once, but twice, and again in the trial term of this court.    The fierceness of the contest has been prolonged for a period of 13 years and upwards, and has resulted at last in the surrender by the present defendant, and the money paid, not to the plaintiff, however, as an individual, but to him as trustee, for distribution among the coupon-holders, of which it does not appear that he is entitled to a single dollar.    During this period of 13 years he has borne the whole expense of the litigation, except as his adversary has been by the court compelled to pay certain costs, wholly inadequate by way of recompense, and except the printing of the last case on appeal to the court of appeals.    It is now claimed that plaintiff is entitled to nothing, either for money actually expended, or for an allowance as compensation, and that, in addition, his counsel is entitled to nothing beyond the costs taxed and allowed, except as he has the right to demand it from the plaintiff.    The claim thus advanced, and as pertinaciously argued as any other in this much litigated case, rests for its basis upon the ground that plaintiff assumed the payment of the interest by virtue of his lease, and consequently that he was litigating alone to relieve himself from liability as a primary debtor.    I am not inclined to adopt this view.    On the contrary, it impresses itself upon my mind that his liability was simply an incident in the controversy.    The property of the lessor railroad, with all its appurtenances, was in the possession and under the control of the defendants in the several actions.    This was the property relied upon as security for the payment of the

bonds and interest. As security, the value of its use was the controlling element. Defendants had been in the occupancy and use since the date of the lease, and continued through the whole period covered by the litigation. Their claim to possession rested upon the consent of the Genesee Valley Railroad Company and the rights of the public, and they utterly repudiated being bound by any and all agreements, beyond, perhaps, such as the law might create, based upon the value of the use; and as to that, anchor was cast to the windward in the form of an allegation in the answer that the expense of such use and occupation had been much more than the revenues derived therefrom. Thus, the controlling issue presented for determination was the validity of the agreements. If the attack upon them succeeded, then plaintiff's liability was at once discharged, and with it went the value of the use of the property for the period of the occupancy, and at once the security for the payment of the maturing and matured interest took to itself wings, as it may be assumed the property was not sufficient to pay its mortgage with accumulated interest. If the main purpose of the litigation was to secure the release of plaintiff from his liability, it is inconceivable that he did not accept the judgment of the general term of the supreme court, which effectually wiped out any personal liability disclosed by the present motion. *Woodruff* v. *Railway Co.*, 25 Hun, 246. But he appealed, not to relieve himself, but for the purpose of securing the property, and the value of its use, upon the faith of which the bonds had been negotiated. Had he been defeated, his liability was gone, and with it went the value of the use of the property, and probably the sum of money secured by this judgment, and now under the control of the trustees. He succeeded, secured the money, and incidentally fixed his liability. Plaintiff was not a primary debtor. It was the Genesee Valley road who executed the bonds, and the real security for their payment was the road, and its earning power measured the value. It was to save that, as we have already seen, and in doing that Woodruff represented the bondholders. At the most, he can only be said to have represented himself as surety in connection with a representation that inured to the benefit of all creditors. It is not seen how this dual relation is inconsistent with his trusteeship. It is true the suretyship gave him standing to litigate, but the fruits of it fix the liability of a solvent debtor for the payment of the bonds, and the fund inures to the benefit of the coupon-holders. The release taken by the plaintiff, as we have seen, made him the conduit through which the leased road was placed in possession of a responsible party, who would pay the interest and extend the road. This contract therefore inured to the benefit of the bondholders, and was made for the purpose of security, and for the advantage of the leasing company as a provision for paying the bonds. Under this scheme, therefore, it is quite apparent that it was intended that the road should be operated by a company that would develop its capacity, and thus that the road, the real primary security for payment of the bonds, should be made to pay in the operation, and the whole to inure to the benefit of the bondholders. This scheme the plaintiff has enforced by compelling the operators of the road to pay, as originally intended, and his suretyship has been incidental to the main purpose; and, as plaintiff takes no beneficial interest in the fund, I am of opinion that he becomes entitled to an allowance, upon the principle applicable to trustees. Counsel cites *Attorney General* v. *Insurance Co.*, 91 N. Y. 57, as opposed to this conclusion. In that case the attorney general had obtained judgment dissolving defendant as an insolvent corporation. A receiver was appointed of its assets. On a hearing to determine the amount of allowance to the receiver, certain policy-holders were allowed to intervene, the commissioners were materially reduced. Upon an application for allowance by the attorneys of the policy-holders, it was held that the court had no power to grant it. But the opinion expressly recognizes the rule that the court in its control of a fund is bound to recognize

every substantial equity and every existing right in providing for the distribution of the fund. Equity was denied existence on that application, as the petitioners had brought no fund into court, were not parties to the original action, and had simply intervened to protect personal rights. The present application presents different features. Plaintiff was the prosecutor in the original action and in the last. The settlement of the issues have adjudged that the party in the occupation of the property—the primary security—must pay for such use and occupation, not only for the interest due, but the bonds as well. Plaintiff comes into court bringing a fund, the result of his exertions, and in this fund he has no personal interest, except to distribute it as trustee. This seems, therefore, to be a case where equity and justice press for recognition, and is within the spirit of that decision.

This motion to vacate the orders, notwithstanding the views here expressed, must be granted, as the parties appearing are entitled to notice and an opportunity to contest the amount of the sums allowed. The granting of the allowances without notice was the result of misapprehension. The order will therefore be that the orders heretofore entered be vacated and set aside, and that a referee be appointed to take proof and determine the amount of the several sums to be allowed to the persons thereto entitled, and report to this court with his opinion thereon. If the parties cannot agree upon a referee, then the court to appoint; and when the parties have agreed upon the referee, or the court shall appoint, then a day shall be fixed for a hearing, and such appointment shall be sufficient notice to the parties who have appeared upon this motion upon service of the order herein. The usual notice as for trial before a referee shall also be given by plaintiff to the holders of such other coupons as are known to him, and are entitled to distribution in said fund; and in the event that no such coupon-holders are known, then notice shall be given to Augustus Frank, as trustee, except that in the latter event, said Frank having appeared upon this motion, service of the order fixing the time for such hearing shall be deemed sufficient. No costs of this motion allowed to either party.